IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| LARRY W., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:23cv165 |
| | ) |
| MARTIN O'MALLEY, | ) |
| Commissioner of Social Security[1], | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff Larry W. ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of Defendant Martin O'Malley, Commissioner of the Social Security Administration ("the Commissioner"), denying Plaintiff's claim for disability insurance benefits ("DIB") under the Social Security Act. This action was referred to the undersigned United States Magistrate Judge ("the undersigned") pursuant to 28 U.S.C. § 636(b)(1)(B)–(C), Federal Rule of Civil Procedure 72(b), Eastern District of Virginia Local Civil Rule 72, and the April 2, 2002, Standing Order on Assignment of Certain Matters to United States Magistrate Judges. ECF No. 6.

Presently before the Court is Plaintiff's brief in support of reversal and remand of the Commissioner's decision denying benefits, ECF No. 8, and the Commissioner's brief in support of the Commissioner's decision denying benefits, ECF No. 10. After reviewing the briefs, the undersigned makes this recommendation without a hearing pursuant to Federal Rule of Civil

---

[1] On December 20, 2023, Martin O'Malley became the Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d), the Court substitutes Commissioner Martin O'Malley for former Acting Commissioner Kilolo Kijakazi in this matter.

Procedure 78(b) and Eastern District of Virginia Local Civil Rule 7(J). For the following reasons, the undersigned **RECOMMENDS** that the final decision of the Commissioner be **AFFIRMED**, and that this matter be **DISMISSED WITH PREJUDICE**.

## I. PROCEDURAL BACKGROUND

Plaintiff filed an application for DIB on November 17, 2020, alleging disability due to carpal tunnel, hidradenitis suppurativa, a herniated disc in his back, and diabetes. R. at 79.[2] Plaintiff's application was initially denied on February 19, 2021, and again denied upon reconsideration on September 28, 2021.[3] R. at 78, 95. Plaintiff requested a hearing before an administrative law judge. R. at 209.

A hearing was held on May 25, 2022, at which Plaintiff appeared with counsel before Administrative Law Judge Malik Cutlar ("the ALJ"). R. at 39–59. Both Plaintiff and an impartial vocational expert testified at the hearing. R. at 44–59. On June 29, 2022, the ALJ issued a decision finding Plaintiff not disabled. R. at 20–33. Plaintiff filed a request with the Appeals Council to reconsider the ALJ's decision, which was denied on February 15, 2023, making the ALJ's decision the final decision of the Commissioner. R. at 1–3.

Having exhausted his administrative remedies, on April 18, 2023, Plaintiff filed a Complaint for judicial review of the Commissioner's decision. ECF No. 1. In accordance with the Supplemental Rules for Social Security Actions, on July 10, 2023, Plaintiff filed a brief in support of reversal and remand of the Commissioner's decision. ECF No. 9. On August 9, 2023, the Commissioner filed a brief in support of the Commissioner's decision denying benefits. ECF

---

[2] "R." refers to the certified administrative record that was filed under seal on June 9, 2023. ECF No. 5, pursuant to Eastern District of Virginia Local Civil Rules 5(B) and 7(C)(1).
[3] The ALJ's decision states that Plaintiff's application was denied upon reconsideration on October 5, 2021. R. at 20. However, the "Disability Determination and Transmittal" and "Disability Determination Explanation" in the record both reflect September 28, 2021, as the date of denial. R. at 94, 95.

2

No. 10. Plaintiff did not file a reply brief. Because the matter is fully briefed, it is now ripe for recommended disposition.

## II. RELEVANT FACTUAL BACKGROUND

Because Plaintiff argues a purely legal issue, the Court does not delve into Plaintiff's medical history. The Social Security Administration ("SSA") previously found Plaintiff disabled beginning April 17, 2012. R. at 67. However, the SSA determined that Plaintiff's disability ended on April 1, 2014, and he ceased to receive benefits after that date. R. at 67. With respect to his current application for DIB, Plaintiff was forty-four years old at the time of his alleged onset date. R. at 79. He currently suffers from chronic pain in his back, and weakness in his arms. R. at 45. Plaintiff received a GED and has past relevant work as an HVAC technician. R. at 45. Plaintiff

## III. THE ALJ'S DECISION

To determine if the claimant is eligible for benefits, the ALJ conducts a five-step sequential evaluation process. 20 C.F.R. § 404.1520; *Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015) (summarizing the five-step sequential evaluation). At step one, the ALJ considers whether the claimant has worked since the alleged onset date, and if so, whether that work constitutes substantial gainful activity. § 404.1520(a)(4)(i). At step two, the ALJ considers whether the claimant has a severe physical or mental impairment that meets the duration requirement. § 404.1520(a)(4)(ii). At step three, the ALJ determines whether the claimant has an impairment that meets or equals the severity of a listed impairment set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. § 404.1520(a)(4)(iii). If the claimant does not have an impairment that meets or equals the severity of a listed impairment, the ALJ will determine the claimant's residual functional capacity, that is, the most the claimant can do despite her impairments. § 404.1545(a). At step four, the ALJ considers whether the claimant can still perform past relevant work given his or her

3

residual functional capacity. § 404.1520(a)(4)(iv). Finally, at step five, the ALJ considers whether the claimant can perform other work. § 404.1520(a)(4)(v).

The ALJ will determine the claimant is not disabled if: they have engaged in substantial gainful activity at step one; they do not have any severe impairments at step two; or if the claimant can perform past relevant work at step four. *See Jackson v. Colvin*, No. 2:13cv357, 2014 WL 2859149, at *10 (E.D. Va. June 23, 2014). The ALJ will determine the claimant is disabled if the claimant's impairment meets the severity of a listed impairment at step three, or if the claimant cannot perform other work at step five. *Id.*; *see also Mascio*, 780 F.3d at 634–35 (noting the ALJ will only determine the claimant's residual functional capacity if the first three steps do not determine disability).

Under this sequential analysis, the ALJ made the following findings of fact and conclusions of law:

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the amended alleged disability onset date of April 1, 2021. R. at 23. At step two, the ALJ found that Plaintiff had the following severe impairments: lumbar facet arthropathy; degenerative disc disease of the cervical spine; degenerative disc disease of the thoracic spine with disc protrusions at T5/T6 and T7/T8; status-post thoracic spine surgery; mild to moderate ulnar neuropathies of the bilateral elbows; and obesity. R. at 23–24. At step three, the ALJ considered Plaintiff's severe impairments and found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. R. at 24–25.

After step three, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work, with the following limitations:

4

> [Plaintiff] can occasionally lift and carry ten pounds, frequently lift and carry less than ten pounds, push and pull as much as he can lift and carry, and sit for six hours total per workday. He is able to stand and/or walk for a total of four hours per workday, alternate to sitting for ten minutes during every hour of standing and/or walking. [He] can occasionally operate foot controls with his right foot, occasionally operate hand controls bilaterally, occasionally reach overhead bilaterally, and frequently handle items bilaterally. He can frequently balance and occasionally climb ramps and stairs, stoop, kneel, crouch and crawl but never climb ladders, ropes, or scaffolds. [He] can operate a motor vehicle no more than occasionally.

R. at 25–26.

In making this determination, the ALJ considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. § 404.1529 and SSR 16-3p." R. at 26.

At step four, the ALJ determined that Plaintiff was incapable of performing his past relevant work. R. at 31. While Plaintiff cannot resume his prior employment, the ALJ determined at step five that Plaintiff could perform other jobs that exist in significant numbers in the national economy, including the jobs of addresser, document preparer, and weight tester, all of which are performed at the sedentary level of exertion. R. at 32. Thus, the ALJ determined that Plaintiff was not disabled from the amended alleged onset date, April 1, 2021, through the date of his decision, June 29, 2022. R. at 33.

## IV. STANDARD OF REVIEW

Under the Social Security Act, the Court's review of the Commissioner's final decision is limited to determining whether the decision was supported by substantial evidence in the record and whether the correct legal standard was applied in evaluating the evidence. *See* 42 U.S.C. § 405(g); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "evidence as a reasonable mind might accept as adequate to support a conclusion." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "It consists

of 'more than a mere scintilla of evidence but may be somewhat less than a preponderance.'" *Britt v. Saul*, 860 F. App'x 256, 260 (4th Cir. 2021) (quoting *Craig*, 76 F.3d at 589). The Court looks for an "accurate and logical bridge" between the evidence and the ALJ's conclusions. *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018); *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016); *Mascio v. Colvin*, 780 F.3d 632, 637 (4th Cir. 2015).

In determining whether the Commissioner's decision is supported by substantial evidence, the Court does not "re-weigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [Commissioner]." *Craig*, 76 F.3d at 589. If "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)." *Id.* (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)). Accordingly, if the Commissioner's denial of benefits is supported by substantial evidence and applies the correct legal standard, the Court must affirm the Commissioner's final decision. *Hays*, 907 F.2d at 1456.

## V. ANALYSIS

Plaintiff's appeal to this Court raises a single challenge to the ALJ's decision, arguing that the ALJ failed to acknowledge and resolve a conflict in the VE's testimony regarding "frequent" handling and the three sedentary occupations the VE cited as representative occupations. ECF No. 9 at 5–7. Specifically, Plaintiff contends that the VE testified that Plaintiff's RFC limitation to frequent bilateral handling (defined by the SSA as 34% to 67% of the workday) would allow Plaintiff to perform the three sedentary occupations, but when asked by Plaintiff's counsel if frequent bilateral handling was defined as up to 50% of the day, the VE testified that the three sedentary occupations would no longer remain. *Id.* According to Plaintiff, such testimony presented a conflict that the ALJ was required to resolve. *Id.*

6

Generally, a VE's testimony regarding occupational evidence "should be consistent with the information supplied by the DOT." SSR 00-4P, 2000 WL 1898704, at *2 (Dec. 4, 2000). When faced with an apparent and unresolved conflict between a VE's testimony and the DOT, an ALJ "must elicit a reasonable explanation for the conflict before relying on the VE['s] . . . evidence to support a determination or decision about whether the [plaintiff] is disabled." *Id.* If the VE's testimony conflicts with the DOT, the ALJ must inquire on the record whether there is a conflict and the ALJ should explain and resolve conflicts between the testimony and the DOT. *Id.* (explaining the ALJ's "affirmative responsibility" to resolve conflicts between VE testimony and the DOT); *Pearson v. Colvin*, 810 F.3d 204, 207–08 (4th Cir. 2015) (explaining that the ALJ must resolve all obvious and apparent conflicts).

The SSA defines "frequent" as "occurring from one-third to two-thirds of the time." SSR 83-10, 1983 WL 31251 at *6 (Jan. 1, 1983). Each of the positions that the ALJ relied upon at step five of the sequential evaluation process—addressing clerk, document preparer, and weight tester—require "frequent" bilateral handling. *See DOT* 209.587-010, 1991 WL 671797 (Jan. 1, 2016) (addressing clerk); *DOT* 249.589-017, 1991 WL 672349 (Jan. 1, 2016) (document preparer); *DOT* 539.485-010, 1991 WL 674890 (Jan. 1, 2016) (weight tester).

During the ALJ hearing, the ALJ presented a hypothetical person who, in relevant part, would be limited to lifting and carrying at the sedentary level of exertion, would be limited to four hours standing and walking, could with the ability to sit for ten minutes during every hour of standing, and could frequently handle bilaterally. R. at 55–56. The VE testified that the RFC presented would allow for the occupations of addressing clerk, document preparer, and weight tester. R. at 57.

On cross-examination, Plaintiff's attorney asked the VE about the impact on the occupational base if Plaintiff could *not* frequently handle bilaterally. R. at 57. Specifically, Plaintiff's attorney asked the VE whether the same jobs would be available if the ability to handle bilaterally was reduced to an "occasional basis," defined as up to one-third of the workday. R. at 57. The VE confirmed that no jobs previously cited by the VE would be available, including the jobs of addressing clerk document preparer, and weight tester. R. at 57. Plaintiff's attorney then asked engaged in the following inquiry with the VE:

> [Plaintiff's Attorney:] So, instead of occasional at 33 percent of the day . . . it was at—I'll call it a modified frequent, meaning a maximum 50 percent of the day. Frequent I would assume you would agree is normally defined as up to 67 percent of the day?
>
> [VE:] Yes, that's correct.
>
> [Plaintiff's Attorney:] So, if again, in any of the three hypotheticals that were asked, if [] bilateral handling were reduced to no more than 50 percent of the workday, would that have any adverse impact on any of the jobs that you cited?
>
> [VE:] Yes, it would eliminate those as well. Those positions need at least frequent fine and gross manipulation.

R. at 58.

Plaintiff argues there was conflict in the VE's testimony because the three sedentary occupations that the ALJ relied upon would be eliminated if Plaintiff could not perform bilateral handling on a "modified frequent [basis], meaning a maximum of 50 percent of the day." R. at 58; ECF No. 9 at 6–7. Ultimately, the Court finds that there is no conflict between the VE's testimony and the DOT that the ALJ must resolve.

In the first instance, Plaintiff's reference to a "modified frequent" standard is not part of the definition of bilateral fine and gross manipulation, which can be "occasional," or "frequent," pursuant to the SSA. SSR 83-10, 1983 WL 31251 at *6 (Jan. 1, 1983) ("'Frequent' means

8

occurring from one-third to two-thirds of the time" and "'Occasionally' means occurring from very little up to one-third of the time."). There is no level of frequency labeled "modified frequent." Necessarily, then, no DOT occupation could meet this made-up definition, and there cannot be a conflict between the DOT and the VE's testimony.

Regardless, the VE testified, in accordance with the job descriptions in the DOT, that the three identified jobs require "at least frequent fine and gross manipulation." R. at 58. Plaintiff confuses the VE's testimony to mean that "at least fine and gross manipulation" also means "no less than 67%" of the workday. *See* ECF No. 9 at 7. However, the Court does not interpret the VE's testimony to mean no less than 67% of the workday. Rather, consistent with the SSA's definition of "frequent" and the DOT's description of the cited jobs, frequent constitutes a range between one-third and two-thirds of the day, thus, if a person could not handle bilaterally *up to* two-thirds of the day, they would not be able to perform jobs that require the ability to frequently handle bilaterally. Because there is no conflict between the VE's testimony and the DOT, the ALJ did not err by failing to solve a conflict.

## VI. RECOMMENDATION

Because substantial evidence supports the Commissioner's decision and the correct legal standard was applied, the undersigned **RECOMMENDS** that the final decision of the Commissioner be **AFFIRMED**, and that this matter be **DISMISSED WITH PREJUDICE.**

## VII. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, the parties are notified that:

1. Any party may serve on the other party and file with the Clerk of the Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is forwarded to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C)

and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure Rule 6(a). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

2. A United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984), *cert. denied*, 474 U.S. 1019 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to the counsel of record for Plaintiff and the Commissioner.

/s/ Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
July 1, 2024